UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EILEEN M.,

                                    Plaintiff,                         DECISION AND ORDER

                                                                       21-CV-0740L

                v.


COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____


        Plaintiff, proceeding *pro se*, appeals from a denial of disability benefits by the

Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42

U.S.C. §405(g) to review the Commissioner's final determination.

        On April 17, 2017, plaintiff filed an application for a period of disability and disability

insurance benefits, alleging an inability to work since December 10, 2015. (Dkt. #4 at 25). Her

application was initially denied. Plaintiff requested a hearing, which was held on June 10, 2019

via videoconference before administrative law judge ("ALJ") Susan Smith. The ALJ issued a

decision on August 21, 2019, finding plaintiff not disabled. (Dkt. #4 at 25-33). That decision

became the final decision of the Commissioner when the Appeals Council denied review on

November 30, 2020. (Dkt. #4 at 4-7). Plaintiff now appeals.

        The plaintiff has moved for judgment vacating the ALJ's decision and remanding the

matter for further proceedings (Dkt. #9), and the Commissioner has cross moved for judgment

dismissing the complaint pursuant to Fed. R. Civ. Proc. 12(c) (Dkt. #13). For the reasons set forth

below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

**DISCUSSION**

Familiarity with the five-step evaluation process for determining Social Security disability claims is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

**I.     The ALJ's Decision**

Plaintiff was fifty-eight years old on the alleged onset date, with at least a four-year college education, and past relevant work as an Assistant Director of Coordinated Services for a non-profit human services agency. (Dkt. #4 at 232). Her medical records reflect diagnoses and/or treatment for the following impairments, which the ALJ found to be severe impairments not meeting or equaling a listed impairment: degenerative disc disease, and left shoulder dysfunction status-post surgery. (Dkt. #4 at 27).

The ALJ also noted that diagnoses of anxiety and post-traumatic stress disorder ("PTSD") were reflected in the record. In applying the special technique for mental impairments, the ALJ determined that plaintiff has no limitation in understanding, remembering, or applying information, no limitation in interacting with others, no limitation in maintaining concentration, persistence, and pace, and no limitation in adapting or managing herself. (Dkt. #4 at 28-29). The ALJ accordingly concluded that plaintiff's mental impairments were non-severe.

After reviewing the evidence of record, the ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform light work, with no more than occasional crawling

2

or reaching overhead on the left. She can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to hazards including dangerous moving machinery, uneven terrain, and unprotected heights. (Dkt. #4 at 30).

When presented with this RFC as a hypothetical at the hearing, vocational expert ("VE") Alissa Smith testified that plaintiff's past relevant work corresponded to the Dictionary of Occupational Titles ("DOT") listing for "welfare director," and opined that a person with the posited RFC could perform the requirements of the welfare director position. (Dkt. #4 at 33). The ALJ accordingly found plaintiff not disabled.

## II.     The Appeals Council's Consideration of Post-Decision Evidence

Plaintiff contends that the Appeals Council erred when it declined to consider post-decision chiropractic treatment records and test results, on the grounds that such evidence did not show a reasonable probability of changing the outcome of the ALJ's decision.

The Appeals Council will review a case based on post-decision evidence if, inter alia, the evidence is new, material, and relates to the period under review, and where there is a reasonable probability that the evidence could change the outcome of the ALJ's decision. *See* 20 C.F.R. §404.970(a)(5).

I find no error in the Appeals Council's conclusion that the post-decision evidence would not have changed the outcome of the decision. The objective findings and symptoms reflected in the post-decision treatment records include left shoulder pain and limited range of motion, and moderate left-sided neck pain and back pain with complaints of difficulty with fixed positions. Electrodiagnostic studies showed no evidence of nerve impingement in the upper extremities. Cervical spine x-rays showed muscle spasm, mild spurring, and mild disc narrowing at C4-5, but otherwise "well-maintained" disc spaces, no fracture, and "[n]o other misalignment." (Dkt. #4 at

104-105). MRIs of the cervical and lumbar spine showed degenerative changes and spurring at C5-6, mild stenosis at C4-5, bilateral stenosis from C3-4 and C5-6, and mild disc bulges with foraminal narrowing at L3-4 and L4-5. (Dkt. #4 at 107-108, 112).

Taken as a whole, the post-decision evidence reflects degenerative disc disease and shoulder disorder, with mild diagnostic findings. As such, it is wholly consistent with, and cumulative of, the medical evidence of record which the ALJ considered in determining that degenerative disc disease and left shoulder dysfunction were severe impairments, and that their symptoms limited plaintiff to a range of light work with additional postural limitations. Moreover, the post-decision evidence does not support a finding that plaintiff's limitations met or equaled a listed impairment, or that the ALJ's RFC assessment failed to sufficiently account for them. Accordingly, I find that the Appeals Council did not err when it declined to consider it.

## III.    The ALJ's Weighing of the Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in declining to credit a mental RFC opinion from treating licensed mental health counselor ("LMHC") Erin Marinello, while finding the opinions of consulting physicians to be persuasive, because the consulting opinions provided only a "snapshot" of plaintiff's mental functioning, and were not rendered by a treating source.

I find no error in the ALJ's assessment of the medical opinions of record. The ALJ duly considered Ms. Marinello's treating source opinion, applied the proper standards in determining its persuasiveness, and provided a detailed explanation as to why she did not find it to be persuasive. Ms. Marinello's assessment indicated that plaintiff had "marked" limitations in every functional area (with marked limitations defined as those which "seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis"), and that plaintiff had experienced at least three two-week episodes of decompensation within twelve months on

unspecified dates, "depending on what is happening her life. Holidays are big [triggers]." (Dkt. #4 at 458).

However, as the ALJ correctly observed, the opinion contained no specific functional limitations (other than attendance difficulties), and was inconsistent with the grossly normal objective medical findings contained in the accompanying treatment note, wherein Ms. Marinello described plaintiff's symptoms as ranging from "minimal" to "moderate." (Dkt. #4 at 481). The ALJ also correctly noted that Ms. Marinello's opinion of "marked" limitations was inconsistent with plaintiff's self-reported daily activities, such as self-care, maintaining a home, dancing, playing the guitar, and attending concerts and live musical events. (Dkt. #4 at 29). Further, Ms. Marinello's opinion was contradicted by the medical opinion of consulting psychologist Dr. Susan Santarpia, who examined plaintiff on June 27, 2017, made grossly normal objective findings, and assessed no mental functional limitations. (Dkt. #4 at 403-407).

Plaintiff also argues that the ALJ should have given greater consideration to the Global Assessment of Functioning ("GAF") scores reflected in her medical records – a 54 assigned during an intake visit in 2016, and another 54 assigned by Ms. Marinello in 2019, which indicate "moderate" difficulties in mental or social functioning. (Dkt. #4 at 344, 455). However, as the ALJ properly noted, it is well settled that "GAF scores are of limited evidentiary value," and the ALJ's finding that plaintiff's GAF scores were not persuasive, due to their inconsistency with plaintiff's daily activities, and with the opinions of consulting and reviewing psychologists, was well-supported. (Dkt. #3 at 30). *See Rivera v. Commissioner*, 2021 U.S. Dist. LEXIS 119044 at *6 (E.D.N.Y. 2021)("the Social Security Administration's own guidance discourages the use of GAF scores").

IV.     **Past Relevant Work**

Plaintiff also claims that the ALJ erred in finding that her RFC permitted the performance of her past relevant work. Specifically, plaintiff argues that she never worked under a welfare director job title, that the hearing transcript omitted essential testimony from the VE, and that changes in the field now require educational prerequisites that plaintiff lacks, such that she is no longer qualified for the job, regardless of whether she has the RFC to perform it.

Initially, although plaintiff is correct that her official job title was not "welfare director," plaintiff points to no error in the VE's testimony, which was that plaintiff's past relevant work as an administrator and supervisor in the case management department of a nonprofit agency was functionally equivalent to the welfare director position described in the DOT. Plaintiff points to no discrepancies between the welfare director position and her Assistant Director of Coordinated Services position, as she testified she performed it. As such, I find no error in the ALJ's acceptance of the VE's testimony concerning the nature and characterization of plaintiff's past relevant work with reference to the DOT.

Plaintiff also argues that the VE's testimony was not faithfully transcribed, and failed to take the educational prerequisites of the welfare director position into account. Specifically, plaintiff testified at the hearing that although she had attained her past relevant work on the basis of a theater degree, she had been unsuccessful in applying for other jobs since, "[m]ost of the jobs now require you for those type of positions to have either a social work degree, or an LPN degree." (Dkt. #4 at 52-53). She also contends that the VE admitted at the hearing – in a comment that was allegedly omitted from the transcript – that the VE "c[ouldn]'t speak for the qualifications" that were relevant to the welfare director job. (Dkt. #9 at 4).

Plaintiff is correct that "[w]here the skills needed to perform [an] occupation have changed significantly" since the time plaintiff performed it, "the prior work experience can be considered too remote to qualify as past relevant work." *Larry S. v. Kijakazi*, 2021 U.S. Dist. LEXIS 206698 at *10 (C.D. Cal. 2021)(ALJ erred, and remand is necessary, where ALJ's conclusion that claimant could perform his past relevant work failed to address VE's testimony that significant changes in the relevant industry could create a need for additional training for anyone who left the industry for a significant time). However, even assuming *arguendo* that the VE testified that she "can't speak for the qualifications" relevant to the welfare director position, plaintiff has not proved that such significant changes have occurred to her prior job that it should be considered "too remote" to comprise past relevant work.

Initially, plaintiff's testimony does not indicate the specific jobs to which she had applied. Assuming *arguendo* that they were jobs equivalent to that of welfare director, plaintiff's testimony that "most" of the job openings she had seen required additional qualifications does not indicate that all of them did, or that the number of available jobs were so dramatically eroded by evolved degree requirements as to fall short of existing in significant numbers in the national economy.

Although plaintiff was represented by counsel at the hearing, her attorney did not challenge the VE's testimony with respect to the ability of the hypothetical individual with plaintiff's RFC to perform the welfare director position. It is undisputed that the vocational expert's testimony about the specific vocational preparation level, and general educational development ratings for the position, were consistent with the Dictionary of Occupational Titles, and with plaintiff's background and experience.

Ultimately, it was plaintiff's burden to establish that she was unable to perform her past relevant work as a welfare director, as it was performed in the economy or as she previously

performed it, and she did not. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding plaintiff has burden to show inability to perform past relevant work as actually or generally performed); *Patterson v. Commissioner*, 2019 U.S. Dist. LEXIS 183644 at *28-*29 (W.D.N.Y. 2019)(same).

I have considered the rest of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that the decision-appealed-from was supported by substantial evidence of record, and was not the product of legal error. Plaintiff's motion to vacate the ALJ's decision and remand the matter for further proceedings (Dkt. #9) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 16, 2023.

8